# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**HERNANDEZ CONCRETE PUMPING, INC.,**

    Plaintiff,

v.                                                                                              **No: 1:18-cv-840 RB/KK**

**RAYMOND ALBERT DUQUETTE, III and**
**ACE AMERICAN INSURANCE COMPANY,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Hernandez Concrete Pumping, Inc. (Hernandez Concrete) brought suit against Defendant Raymond Albert Duquette, III (Duquette) and ACE American Insurance Co. after a traffic accident allegedly caused damage to Plaintiff's concrete pumping truck. Hernandez Concrete seeks reimbursement for repairs and lost profits arising from the time needed to repair the truck. Defendant claims, however, that because the truck was repaired immediately after the accident, evidence needed to defend against the claims no longer exists. In this Memorandum Opinion and Order, the Court addresses Duquette's Motion to Dismiss Plaintiff's Complaint for Spoliation of Evidence (Doc. 57). The Court finds that while preserving the truck in its damaged state might have been advisable, the facts neither warrant an outright dismissal of Plaintiff's Complaint nor an adverse instruction regarding the evidence. Therefore, the Court denies Defendant's Motion to Dismiss for Spoliation of Evidence.

**I.     Background**[1]

On November 28, 2017, Dennis Hernandez was driving a Hernandez Concrete pumping truck on Interstate 40. (Doc. 1-1 (Compl.) ¶ 8.) Raymond Duquette's tractor-trailer collided with and damaged Plaintiff's truck. (*Id.* ¶ 8.) Plaintiff suggests that Duquette was looking in his rearview mirror at the time of the collision and that this "inattention" caused the accident. (*Id.* ¶ 9.) Plaintiff thus claims that Duquette is liable for the damage to the truck. (*Id.* ¶ 10.)

Plaintiff filed suit in New Mexico state court on July 17, 2018. The case was removed to this Court on September 4, 2018, through the Court's diversity jurisdiction. (Doc. 1.) Hernandez Concrete seeks $26,000 in damages for repairs to the truck. In addition, it seeks approximately $58,000 in lost profits for the time that the truck was not in service.

On June 4, 2019, Defendant Duquette filed a Motion to Dismiss based on spoliation of evidence. (Doc. 57.) Defendant argues that after the accident, litigation was imminent, but because the concrete pumping truck was immediately repaired, critical proof relating to damages and liability no longer exists. (*See id.*) As a result, Defendant asks the Court to dismiss Plaintiff's Complaint, or in the alternative impose appropriate sanctions. (*Id.*)

**II.    Legal Standard**

Spoliation involves the "intentional destruction, mutilation, alteration, or concealment of evidence." *Spoliation*, *Black's Law Dictionary* (8th ed. 2004); *see also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (defining spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation"). Litigants have an "obligation to preserve evidence . . . when

---

[1] The facts in this section are taken from Plaintiff's Complaint (Doc. 1-1), and all well-pleaded factual allegations are presented in this section as true and construed in light most favorable to Plaintiff. *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015).

the party has notice that the evidence is relevant to litigation." *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 426 (2d Cir. 2001)). This obligation to preserve evidence arises when litigation is "imminent" and may attach prior to a threatened lawsuit. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

A spoliation sanction combats any resulting prejudice associated with the loss of evidence. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process."). Its overarching goals include: (i) *punishment* for discarding valuable evidence; (ii) inclusion of inferences to *accurately* account for the lost evidence; and (iii) *compensation* for the aggrieved party. *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1300 (D.N.M. 2016).

In determining whether to sanction a party for spoliation of evidence, courts evaluate two factors: "(1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party." *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, at *4 (10th Cir. 1998) (citations omitted). First, courts are divided on whether sanctions require bad faith or ordinary negligence to prove culpability. *See id.* at *3–4 (requiring no showing of bad faith to uphold a spoliation sanction); *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 807 (7th Cir. 1995) (requiring no bad faith); *Zubalake*, 220 F.R.D. at 221 (discussing the Second Circuit's approach, which only requires "ordinary negligence"); *but see Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011) (discussing the need to prove bad faith to make out a spoliation sanction). Critical to an analysis, however, the Tenth Circuit requires bad faith to prove spoliation when the desired remedy is an adverse inference or

3

dismissal. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (holding that "[t]he adverse inference must be predicated on the bad faith of the party destroying the records").

Second, a party must show "meaningful evidence that [it] has been actually, rather than merely theoretically, prejudiced." *Burlington*, 505 F.3d at 1032–33. The crux of this prong is that without the evidence at issue, a party "cannot defend [against the] lawsuit." *Id.* at 1032. Courts will not intervene, however, unless the prejudice is "extraordinary." *Silvestri*, 271 F.3d at 593.

Consequently, district courts are equipped with tools to address this prejudice, and they have discretion to fashion remedies for spoliation violations. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (targeting only violations that "abuse[] the judicial process"). These remedies run the gamut from full dismissal, *see Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988) (limiting sanctions to those serving the interests of justice), to adverse inference instructions, *see Dillon v. Nissan Motor Co.*, 986 F.2d 263, 265 (8th Cir. 1993) (upholding a district court's adverse inference instruction), to monetary sanctions, *see Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993) (upholding a monetary sanction without an explicit finding of bad faith). Therefore, factual circumstances dictate how district courts handle spoliation. *See Chambers*, 501 U.S. at 45–46.

## III. Analysis

At its core, this dispute is about whether Defendant Duquette is left with enough resources to adequately defend the claims against him, given that certain evidence from the accident no longer exists in its most accessible form.

### A. Litigation Hold

Traditionally, the "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be

4

relevant to future litigation." *Zubalake*, 220 F.R.D. at 216 (quotation omitted). This duty, however, may extend beyond the limited confines of a filed lawsuit. Here, the parties dispute whether a litigation hold was required in the immediate aftermath of the accident. Defendant argues that litigation was imminent, (Doc. 57 at 5), given that the parties traded insurance information at the scene, (Doc. 60 at 8.) Plaintiff, however, argues that the immediacy of litigation cannot be gleaned solely from the exchange of insurance information—a standard practice after any traffic accident. (*Id.* at 8–9.) Plaintiff claims that given the size of its business, its primary goal was not to launch a full investigation, but rather to repair the truck so that it would become operational again. (*Id.*)

Though Plaintiff's desire to return the truck to service is reasonable, litigation became foreseeable—or at least possible—after the accident. Hernandez Concrete is a small business with limited resources, but despite the need to minimize the time that the truck was out of service, it also seems likely that when another party is allegedly at fault for that truck's nonuse, Plaintiff would seek redress. Without an investigation, the ability to defend against Plaintiff's claims becomes more difficult. Therefore, Plaintiff should have protected the evidence with greater care.

### B. Spoliation Sanctions

The existence of a duty to safeguard evidence, however, is not the end of the discussion. Spoliation sanctions revolve around two additional factors: (i) the culpability of the offender and (ii) the resultant prejudice to the other party. *See Jordan F. Miller Corp.*, 139 F.3d at *4.

#### i. Culpability

Culpability refers to the "degree of fault to be assigned to the offending party." *Baker v. Cmty. Health Sys., Inc.*, No. CIV. 05-279 WJ/ACT, 2012 WL 12294413, at *12 (D.N.M. Aug. 31, 2012). While courts have differed on this issue, the Tenth Circuit still requires bad faith. *See Aramburu*, 112 F.3d at 1407.

Defendant argues that Hernandez Concrete, despite its duty to preserve the post-accident vehicle, "failed to obtain a repair estimate *before* repairs were completed" and began the repairs "*the day after* the accident." (Doc. 57 at 6.) This failure suggests that Plaintiff "knew" Duquette actively sought an assessment of the vehicle. (*Id.* at 5.) Defendant Duquette relies on *Allstate* and *Jordan F. Miller Corp.* to soften the culpability requirement. (Doc. 64 at 7.) In *Allstate*, an allegedly defective grill caused fire damage to a home. *See* 53 F.3d at 805. The insurer disposed of the remaining grill parts prior to an inspection, prompting the district court to dismiss the case because liability could not be proven. *See id.* at 805–06. In *Jordan F. Miller Corp.*, the defendant's plane landing gear malfunctioned, but the defendant disposed of the components at issue before the investigation was completed. *See* 139 F.3d at *1–2. The Tenth Circuit determined that the district court did not abuse its discretion in dismissing the case because the defendant could not mount an adequate defense at trial without the evidence. *See id.*

Plaintiff, however, counters that there was no bad faith on its part. (Doc. 60 at 6.) Relying on *Aramburu*, it claims that mere negligence does not warrant an adverse inference "because it does not support an inference of consciousness of a weak case." (*Id.* at 3 (quoting *Aramburu*, 112 F.3d at 1407.)) The court in *Ashton* granted dismissal because enough circumstantial evidence existed to suggest that the defendants intentionally altered evidence after the accident, depriving plaintiffs of the chance to inspect the evidence. *See* 772 F. Supp. 2d at 775–77, 779. In the present case, Plaintiff contends that its motivation was merely that of "a small business [trying] to repair its truck and get back to business." (Doc. 60 at 6.) Waiting for a full investigation would have cost it thousands of dollars. It was not a "sophisticated enterprise" able to strategically litigate and did not hire an attorney until seven months after the accident. (*Id.*)

Plaintiff Hernandez Concrete would have been better served—from a litigation perspective—by waiting for an investigation. That said, its desire to repair the truck involved no bad faith. This case is distinguished from *Allstate* because there the issue was whether the manufacturer was "deprived of the ability to establish its case." 53 F.3d at 807. The loss of the grill parts made it impossible to prove the origin of the fire. And in *Jordan F. Miller Corp.*, the evidence was destroyed amid an ongoing investigation, again making it impossible to prove liability. *See* 139 F.3d at *6. In the case at bar, the immediate repairs may make it more challenging to defend, but they also hinder Hernandez Concrete's ability to support its claims. Therefore, the added burden on the Plaintiff likely indicates the absence of bad faith manipulation.

### ii. Prejudice

The other determinative factor is prejudice created from the spoliation of evidence. *Id.* at *4. The aim is to ensure that parties can adequately proceed with trial. Defendant argues that Plaintiff's "blatant destruction of evidence" immediately after the accident, (doc. 57 at 6), and the lack of a "comprehensive repair estimate" created prejudice (*id.*) This leaves Defendant with no means of gathering information "from any entity other than the Plaintiff." (*Id.* at 9.) Defendant alleges that these factors, together, hobble its ability to assess liability and defend Plaintiff's claim for damages. Yet Plaintiff contends that no prejudice resulted from its immediate repair of the truck. Its desire to begin working again hinged on the truck becoming operational. (Doc. 60 at 11.) Had Plaintiff waited for an independent investigation, it would have resulted in a more significant claim for lost profits. (*Id.* at 9.) Therefore, if Duquette suffered prejudice because of the repairs, it was only minimal. (*Id.*)

The Court recognizes Defendant's increased difficulty in surveying the damage to the truck. Determining liability might now be more difficult without crash reconstruction or forensic

7

analysis. But while the collection of receipts, pictures, and reports might not provide Defendant with the best evidence to defend against Plaintiff's claims, it equally hinders the Plaintiff in its damages/liability presentation. The immediate repairs did not significantly prejudice Duquette.

IV.     **Conclusion**

Plaintiff could have better preserved evidence relevant to litigation, but its conduct neither warrants dismissal nor an adverse inference instruction. Had Defendant shown that Plaintiff repaired the truck in bad faith to hide or alter evidence, a different outcome would have resulted. But Hernandez Concrete's only desire was to have its truck operating again. And while the case may become more difficult to defend without the full range of evidentiary resources, the task remains feasible. Without a showing of bad faith or significant prejudice, the Court will not grant Defendant's motion to dismiss for spoliation.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint for Spoliation of Evidence (Doc. 57) is **DENIED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**